## TUILAEPA *v.* CALIFORNIA

No. 93–5131.   Argued March 22, 1994—Decided June 30, 1994*

---

*Together with No. 93–5161, *Proctor* v. *California,* also on certiorari to
the same court.

KENNEDY, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, SCALIA, SOUTER, and THOMAS, JJ., joined. SCALIA, J., *post*, p. 980, and SOUTER, J., *post*, p. 980, filed concurring opinions. STEVENS, J., filed an opinion concurring in the judgment, in which GINSBURG, J., joined, *post*, p. 981. BLACKMUN, J., filed a dissenting opinion, *post*, p. 984.

*Howard W. Gillingham,* by appointment of the Court, 510 U. S. 1038, argued the cause and filed briefs for petitioner in No. 93-5131. *Wendy C. Lascher,* by appointment of the Court, 510 U. S. 1038, argued the cause for petitioner in No. 93–5161. With her on the brief was *Susan B. Lascher.*

*Wm. George Prahl,* Deputy Attorney General of California, argued the cause for respondent in both cases. With him on the brief were *Daniel E. Lungren,* Attorney General, *George Williamson,* Chief Assistant Attorney General, and *Dane R. Gillette,* Deputy Attorney General.†

---

†*Michael Laurence, Paul L. Hoffman,* and *Mark Silverstein* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging reversal in No. 93–5131. *Clifford Gardner, Melissa W. Johnson, Gail R. Weinheimer,* and *Steven W. Parnes* filed a brief for the California Appellate Project as *amicus curiae* urging reversal in both cases.

*Kent S. Scheidegger* filed a brief for the Criminal Justice Legal Foundation as *amicus curiae* urging affirmance in both cases.

JUSTICE KENNEDY delivered the opinion of the Court.

In California, to sentence a defendant to death for first-degree murder the trier of fact must find the defendant guilty and also find one or more of 19 special circumstances listed in Cal. Penal Code Ann. § 190.2 (West 1988 and Supp. 1994). The case then proceeds to the penalty phase, where the trier of fact must consider a number of specified factors in deciding whether to sentence the defendant to death. § 190.3.* These two cases present the question whether three of the § 190.3 penalty-phase factors are unconstitutionally vague under decisions of this Court construing the

---

*Section 190.3 provides in part:

"In determining the penalty, the trier of fact shall take into account any of the following factors if relevant:

"(a) The circumstances of the crime of which the defendant was convicted in the present proceeding and the existence of any special circumstances found to be true pursuant to Section 190.1.

"(b) The presence or absence of criminal activity by the defendant which involved the use or attempted use of force or violence or the express or implied threat to use force or violence.

"(c) The presence or absence of any prior felony conviction.

"(d) Whether or not the offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.

"(e) Whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act.

"(f) Whether or not the offense was committed under circumstances which the defendant reasonably believed to be a moral justification or extenuation for his conduct.

"(g) Whether or not defendant acted under extreme duress or under the substantial domination of another person.

"(h) Whether or not at the time of the offense the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, or the [e]ffects of intoxication.

"(i) The age of the defendant at the time of the crime.

"(j) Whether or not the defendant was an accomplice to the offense and his participation in the commission of the offense was relatively minor.

"(k) Any other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime."

Cruel and Unusual Punishments Clause of the Eighth Amendment, made applicable to the States by the Fourteenth Amendment.

## I

Petitioner Tuilaepa's case arises out of a murder he committed in Long Beach, California, in October 1986. Tuilaepa and an accomplice walked into the Wander Inn Bar in Long Beach, where a small crowd had gathered to watch Monday Night Football. Tuilaepa, who was carrying a .22-caliber rifle, approached the bartender, pointed the rifle at him, and demanded money from the cash register. After the bartender turned over the money, Tuilaepa and his accomplice began robbing the bar's patrons. When the accomplice demanded money from a man named Melvin Whiddon, Whiddon refused and knocked the accomplice to the floor. Tuilaepa shot Whiddon in the neck and next shot Whiddon's brother, Kelvin, who was standing nearby. Tuilaepa turned to another man, Bruce Monroe, and shot him in the stomach. As Tuilaepa and his accomplice ran toward the back door, they confronted Kenneth Boone. Tuilaepa shot Boone in the neck. Melvin Whiddon died at the scene from the gunshot wounds; the others suffered serious and in some cases permanent injuries.

The State sought the death penalty against Tuilaepa, charging him with the murder of Melvin Whiddon and one special circumstance under § 190.2: murder during the commission of a robbery. The jury found Tuilaepa guilty of first-degree murder and also found the special circumstance true. At the penalty phase, the trial judge instructed the jury to consider the relevant sentencing factors specified in § 190.3. The jury was unanimous in sentencing Tuilaepa to death.

Petitioner Proctor murdered Bonnie Stendal, a 55-year-old schoolteacher who lived in Burney, a small community in Shasta County, California. On a night in April 1982, Proctor entered Mrs. Stendal's home and beat her, causing numerous

cuts and bruises on her face. Proctor stabbed Mrs. Stendal in the neck several times and inflicted seven stab wounds in the area of the right breast. Proctor raped Mrs. Stendal and committed further sexual assaults with a foreign object. After beating, torturing, and raping Mrs. Stendal, Proctor strangled her to death and dumped her body on the side of the road near Lake Britton, 12 miles from Burney. The body was found late the next afternoon, clad in a nightgown with hands tied behind the back.

The State sought the death penalty against Proctor, charging him with murder and a number of special circumstances under § 190.2 including murder during the commission of a rape, murder during the commission of a burglary, and infliction of torture during a murder. The jury found Proctor guilty of murder and found the three special circumstances true. After a mistrial at the penalty phase, Proctor's motion for change of venue was granted, and a new sentencing jury was empaneled in Sacramento County. The trial judge instructed the jury to consider the sentencing factors specified in § 190.3. The jury was unanimous in sentencing Proctor to death.

Petitioners appealed to the Supreme Court of California, which affirmed their convictions and death sentences. No. 93–5131, 4 Cal. 4th 569, 842 P. 2d 1142 (1992), and No. 93–5161, 4 Cal. 4th 499, 842 P. 2d 1100 (1992). We granted certiorari, 510 U. S. 1010 (1993), and now affirm.

## II

### A

Our capital punishment cases under the Eighth Amendment address two different aspects of the capital decisionmaking process: the eligibility decision and the selection decision. To be eligible for the death penalty, the defendant must be convicted of a crime for which the death penalty is a proportionate punishment. *Coker* v. *Georgia*, 433 U. S. 584 (1977). To render a defendant eligible for the death penalty

in a homicide case, we have indicated that the trier of fact must convict the defendant of murder and find one "aggravating circumstance" (or its equivalent) at either the guilt or penalty phase. See, *e. g., Lowenfield* v. *Phelps,* 484 U. S. 231, 244–246 (1988); *Zant* v. *Stephens,* 462 U. S. 862, 878 (1983). The aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both). *Lowenfield, supra,* at 244–246. As we have explained, the aggravating circumstance must meet two requirements. First, the circumstance may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder. See *Arave* v. *Creech,* 507 U. S. 463, 474 (1993) ("If the sentencer fairly could conclude that an aggravating circumstance applies to *every* defendant eligible for the death penalty, the circumstance is constitutionally infirm"). Second, the aggravating circumstance may not be unconstitutionally vague. *Godfrey* v. *Georgia,* 446 U. S. 420, 428 (1980); see *Arave, supra,* at 471 (court "'must first determine whether the statutory language defining the circumstance is itself too vague to provide any guidance to the sentencer'") (quoting *Walton* v. *Arizona,* 497 U. S. 639, 654 (1990)).

We have imposed a separate requirement for the selection decision, where the sentencer determines whether a defendant eligible for the death penalty should in fact receive that sentence. "What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Zant, supra,* at 879; see also *Woodson* v. *North Carolina,* 428 U. S. 280, 303–304 (1976) (plurality opinion). That requirement is met when the jury can consider relevant mitigating evidence of the character and record of the defendant and the circumstances of the crime. *Blystone* v. *Pennsylvania,* 494 U. S. 299, 307 (1990) ("requirement of individualized sentencing in capital cases is satisfied by allowing the jury to consider all

relevant mitigating evidence"); see *Johnson* v. *Texas*, 509 U. S. 350, 361 (1993).

The eligibility decision fits the crime within a defined classification. Eligibility factors almost of necessity require an answer to a question with a factual nexus to the crime or the defendant so as to "make rationally reviewable the process for imposing a sentence of death." *Arave, supra,* at 471 (internal quotation marks omitted). The selection decision, on the other hand, requires individualized sentencing and must be expansive enough to accommodate relevant mitigating evidence so as to assure an assessment of the defendant's culpability. The objectives of these two inquiries can be in some tension, at least when the inquiries occur at the same time. See *Romano* v. *Oklahoma, ante,* at 6 (referring to "two somewhat contradictory tasks"). There is one principle common to both decisions, however: The State must ensure that the process is neutral and principled so as to guard against bias or caprice in the sentencing decision. See *Gregg* v. *Georgia,* 428 U. S. 153, 189 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.) (procedures must "minimize the risk of wholly arbitrary and capricious action"). That is the controlling objective when we examine eligibility and selection factors for vagueness. Indeed, it is the reason that eligibility and selection factors (at least in some sentencing schemes) may not be "too vague." *Walton, supra,* at 654; see *Maynard* v. *Cartwright,* 486 U. S. 356, 361–364 (1988).

Because "the proper degree of definition" of eligibility and selection factors often "is not susceptible of mathematical precision," our vagueness review is quite deferential. *Walton, supra,* at 655; see *Gregg, supra,* at 193–194 (factors "are by necessity somewhat general"). Relying on the basic principle that a factor is not unconstitutional if it has some "common-sense core of meaning . . . that criminal juries should be capable of understanding," *Jurek* v. *Texas,* 428 U. S. 262, 279 (1976) (White, J., concurring in judgment), we

have found only a few factors vague, and those in fact are quite similar to one another. See *Maynard, supra,* at 363–364 (question whether murder was "especially heinous, atrocious, or cruel"); *Godfrey, supra,* at 427–429 (question whether murder was "outrageously or wantonly vile, horrible and inhuman"); cf. *Arave,* 507 U. S., at 472 ("We are not faced with pejorative adjectives . . . that describe a crime as a whole"). In providing for individualized sentencing, it must be recognized that the States may adopt capital sentencing processes that rely upon the jury, in its sound judgment, to exercise wide discretion. That is evident from the numerous factors we have upheld against vagueness challenges. See, *e. g., id.,* at 472–473 (question whether the defendant was a "cold-blooded, pitiless slayer" is not unconstitutionally vague); *Walton, supra,* at 654 (question whether "perpetrator inflict[ed] mental anguish or physical abuse before the victim's death" with "[m]ental anguish includ[ing] a victim's uncertainty as to his ultimate fate" is not unconstitutionally vague) (internal quotation marks omitted); *Proffitt* v. *Florida,* 428 U. S. 242, 255–258 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.) (various "mitigating" questions not unconstitutionally vague, nor is the question whether the crime was a "conscienceless or pitiless crime which [wa]s unnecessarily torturous to the victim") (internal quotation marks omitted); *Jurek, supra,* at 274–276 (question "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society" is not unconstitutionally vague).

In our decisions holding a death sentence unconstitutional because of a vague sentencing factor, the State had presented a specific proposition that the sentencer had to find true or false (*e. g.,* whether the crime was especially heinous, atrocious, or cruel). We have held, under certain sentencing schemes, that a vague propositional factor used in the sentencing decision creates an unacceptable risk of randomness, the mark of the arbitrary and capricious sentencing process

prohibited by *Furman* v. *Georgia,* 408 U. S. 238 (1972). See *Stringer* v. *Black,* 503 U. S. 222 (1992). Those concerns are mitigated when a factor does not require a yes or a no answer to a specific question, but instead only points the sentencer to a subject matter. See Cal. Penal Code Ann. §§ 190.3(a), (k) (West 1988). Both types of factors (and the distinction between the two is not always clear) have their utility. For purposes of vagueness analysis, however, in examining the propositional content of a factor, our concern is that the factor have some "common-sense core of meaning . . . that criminal juries should be capable of understanding." *Jurek, supra,* at 279 (White, J., concurring in judgment).

## B

With those principles in mind, we consider petitioners' vagueness challenge to the California scheme. A defendant in California is eligible for the death penalty when the jury finds him guilty of first-degree murder and finds one of the § 190.2 special circumstances true. See *California* v. *Ramos,* 463 U. S. 992, 1008 (1983) (jury found that "the defendant [fell] within the legislatively defined category of persons eligible for the death penalty [by] determining the truth of the alleged special circumstance," commission of murder during the course of a robbery). (Petitioners do not argue that the special circumstances found in their cases were insufficient, so we do not address that part of California's scheme save to describe its relation to the selection phase.) At the penalty phase, the jury is instructed to consider numerous other factors listed in § 190.3 in deciding whether to impose the death penalty on a particular defendant. Petitioners contend that three of those § 190.3 sentencing factors are unconstitutional and that, as a consequence, it was error to instruct their juries to consider them. Both Proctor and Tuilaepa challenge factor (a), which requires the sentencer to consider the "circumstances of the crime of which the defendant was convicted in the present proceeding and the exist-

ence of any special circumstances found to be true." Tui-
laepa challenges two other factors as well: factor (b), which
requires the sentencer to consider "[t]he presence or absence
of criminal activity by the defendant which involved the use
or attempted use of force or violence or the express or
implied threat to use force or violence"; and factor (i),
which requires the sentencer to consider "[t]he age of the
defendant at the time of the crime." We conclude that
none of the three factors is defined in terms that violate
the Constitution.

Petitioners' challenge to factor (a) is at some odds with
settled principles, for our capital jurisprudence has estab-
lished that the sentencer should consider the circumstances
of the crime in deciding whether to impose the death penalty.
See, e. g., Woodson, 428 U. S., at 304 ("[C]onsideration of . . .
the circumstances of the particular offense [is] a constitution-
ally indispensable part of the process of inflicting the penalty
of death"). We would be hard pressed to invalidate a jury
instruction that implements what we have said the law re-
quires. In any event, this California factor instructs the
jury to consider a relevant subject matter and does so in
understandable terms. The circumstances of the crime are
a traditional subject for consideration by the sentencer, and
an instruction to consider the circumstances is neither vague
nor otherwise improper under our Eighth Amendment
jurisprudence.

Tuilaepa also challenges factor (b), which requires the sen-
tencer to consider the defendant's prior criminal activity.
The objection fails for many of the same reasons. Factor (b)
is phrased in conventional and understandable terms and
rests in large part on a determination whether certain
events occurred, thus asking the jury to consider matters of
historical fact. Under other sentencing schemes, in Texas
for example, jurors may be asked to make a predictive judg-
ment, such as "whether there is a probability that the de-
fendant would commit criminal acts of violence that would

constitute a continuing threat to society." See *Jurek*, 428 U. S., at 269. Both a backward-looking and a forward-looking inquiry are a permissible part of the sentencing process, however, and the States have considerable latitude in determining how to guide the sentencer's decision in this respect. Here, factor (b) is not vague.

Tuilaepa's third challenge is to factor (i), which requires the sentencer to consider "[t]he age of the defendant at the time of the crime." This again is an unusual challenge in light of our precedents. See *Eddings* v. *Oklahoma*, 455 U. S. 104, 115–117 (1982) (age may be relevant factor in sentencing decision). The factual inquiry is of the most rudimentary sort, and there is no suggestion that the term "age" is vague. Petitioner contends, however, that the age factor is equivocal and that in the typical case the prosecution argues in favor of the death penalty based on the defendant's age, no matter how old or young he was at the time of the crime. It is neither surprising nor remarkable that the relevance of the defendant's age can pose a dilemma for the sentencer. But difficulty in application is not equivalent to vagueness. Both the prosecution and the defense may present valid arguments as to the significance of the defendant's age in a particular case. Competing arguments by adversary parties bring perspective to a problem, and thus serve to promote a more reasoned decision, providing guidance as to a factor jurors most likely would discuss in any event. We find no constitutional deficiency in factor (i).

## C

Petitioners could not and do not take great issue with the conclusion that factors (a), (b), and (i) provide common and understandable terms to the sentencer. Cf. *Godfrey*, 446 U. S., at 429 ("jury's interpretation of [outrageously or wantonly vile, horrible and inhuman factor] can only be the subject of sheer speculation"). Petitioners argue, however, that selection factors must meet the requirements for eligibility

factors, Brief for Petitioner in No. 93–5161, pp. 10–25, and therefore must require an answer to a factual question, as eligibility factors do. According to petitioners, a capital jury may not be instructed simply to consider an open-ended subject matter, such as "the circumstances of the crime" or "the background of the defendant." Apart from the fact that petitioners' argument ignores the obvious utility of these open-ended factors as part of a neutral sentencing process, it contravenes our precedents. Our decisions in *Zant* and *Gregg* reveal that, at the selection stage, the States are not confined to submitting to the jury specific propositional questions. In *Zant*, we found no constitutional difficulty where the jury had been told to consider "'all facts and circumstances presented in extenuation, mitigation, and aggravation of punishment as well as such arguments as have been presented for the State and for the Defense.'" 462 U. S., at 878–880, 889, n. 25. We also stated that "[n]othing in the United States Constitution prohibits a trial judge from instructing a jury that it would be appropriate to take account of a defendant's prior criminal record in making its sentencing determination." *Id.*, at 888. And in *Gregg,* we rejected a vagueness challenge to that same Georgia sentencing scheme in a case in which the "judge . . . charged the jury that in determining what sentence was appropriate the jury was free to consider the facts and circumstances, if any, presented by the parties in mitigation or aggravation." 428 U. S., at 161, 203–204. In both cases, therefore, the Court found no constitutional problem with a death sentence where the jury instructions directed consideration of the "facts and circumstances" of the case. In these cases as well, we must reject petitioners' suggestion that the Constitution prohibits sentencing instructions that require the trier of fact to consider a relevant subject matter such as the "circumstances of the crime."

Petitioners also suggest that the § 190.3 sentencing factors are flawed because they do not instruct the sentencer how to

weigh any of the facts it finds in deciding upon the ultimate sentence. In this regard, petitioners claim that a single list of factors is unconstitutional because it does not guide the jury in evaluating and weighing the evidence and allows the prosecution (as well as the defense) to make wide-ranging arguments about whether the defendant deserves the death penalty. This argument, too, is foreclosed by our cases. A capital sentencer need not be instructed how to weigh any particular fact in the capital sentencing decision. In *California* v. *Ramos*, for example, we upheld an instruction informing the jury that the Governor had the power to commute life sentences and stated that "the fact that the jury is given no specific guidance on how the commutation factor is to figure into its determination presents no constitutional problem." 463 U. S., at 1008–1009, n. 22. Likewise, in *Proffitt* v. *Florida*, we upheld the Florida capital sentencing scheme even though "the various factors to be considered by the sentencing authorities [did] not have numerical weights assigned to them." 428 U. S., at 258. In *Gregg*, moreover, we "approved Georgia's capital sentencing statute even though it clearly did not channel the jury's discretion by enunciating specific standards to guide the jury's consideration of aggravating and mitigating circumstances." *Zant*, 462 U. S., at 875. We also rejected an objection "to the wide scope of evidence and argument" allowed at sentencing hearings. 428 U. S., at 203–204. In sum, "discretion to evaluate and weigh the circumstances relevant to the particular defendant and the crime he committed" is not impermissible in the capital sentencing process. *McCleskey* v. *Kemp*, 481 U. S. 279, 315, n. 37 (1987). "Once the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty, . . . the jury then is free to consider a myriad of factors to determine whether death is the appropriate punishment." *Ramos, supra,* at 1008. Indeed, the sentencer may be given "unbridled discretion in determining whether the death penalty should be

imposed after it has found that the defendant is a member of the class made eligible for that penalty." *Zant, supra,* at 875; see also *Barclay* v. *Florida,* 463 U. S. 939, 948–951 (1983) (plurality opinion). In contravention of those cases, petitioners' argument would force the States to adopt a kind of mandatory sentencing scheme requiring a jury to sentence a defendant to death if it found, for example, a certain kind or number of facts, or found more statutory aggravating factors than statutory mitigating factors. The States are not required to conduct the capital sentencing process in that fashion. See *Gregg, supra,* at 199–200, n. 50.

The instructions to the juries in petitioners' cases directing consideration of factor (a), factor (b), and factor (i) did not violate the Constitution. The judgments of the Supreme Court of California are

*Affirmed.*

JUSTICE SCALIA, concurring.

It is my view that once a State has adopted a methodology to narrow the eligibility for the death penalty, thereby ensuring that its imposition is not "freakish," *Wainwright* v. *Goode,* 464 U. S. 78, 87 (1983) *(per curiam),* the distinctive procedural requirements of the Eighth Amendment have been exhausted. See *Walton* v. *Arizona,* 497 U. S. 639, 669–673 (1990) (SCALIA, J., concurring in part and concurring in judgment). Today's decision adheres to our cases which acknowledge additional requirements, but since it restricts their further expansion it moves in the right direction. For that reason, and without abandoning my prior views, I join the opinion of the Court.

JUSTICE SOUTER, concurring.

I join the Court's opinion because it correctly recognizes that factors adequate to perform the function of genuine narrowing, as well as factors that otherwise guide the jury in selecting which defendants receive the death penalty, are not

susceptible to mathematical precision; they must depend for their requisite clarity on embodying a "common-sense core of meaning," as Justice White put it in *Jurek* v. *Texas,* 428 U. S. 262, 279 (1976) (concurring opinion). Taking factor (b) to be essentially propositional, as the Court uses the term, *ante,* at 974–975, I find it is sufficiently clear to pass muster; and I agree with the Court's analysis of factor (i) and the challenged portion of factor (a), neither of which is framed as a proposition.

JUSTICE STEVENS, with whom JUSTICE GINSBURG joins, concurring in the judgment.

As these cases come to us they present a question that the Court answered in *Zant* v. *Stephens,* 462 U. S. 862 (1983). California, like Georgia, has provided a procedure for determining whether a defendant found guilty of murder is eligible for the death penalty. Petitioners have not challenged the constitutionality of that procedure or its application in these cases. Accordingly, our decision rests on the same assumption that we made in *Zant,* namely, that the statutory procedure for determining eligibility adequately confines the class of persons eligible for the death penalty to a narrow category in which there is a special justification for "the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Id.,* at 877.

The question is whether, in addition to adequately narrowing the class of death-eligible defendants, the State must channel the jury's sentencing discretion when it is deciding whether to impose the death sentence on an eligible defendant by requiring the trial judge to characterize relevant sentencing factors as aggravating or mitigating. In *Zant* we held that the incorrect characterization of a relevant factor as an aggravating factor did not prejudice the defendant; it follows, I believe, that the failure to characterize factors such as the age of the defendant or the circumstances of the crime as either aggravating or mitigating is also unobjectionable.

Indeed, I am persuaded that references to such potentially ambiguous, but clearly relevant, factors actually reduces the risk of arbitrary capital sentencing.

Prior to the Court's decision in *Furman* v. *Georgia,* 408 U. S. 238 (1972), in a number of States the death penalty was authorized not only for all first-degree murders, but for less serious offenses such as rape, armed robbery, and kidnaping as well. Moreover, juries had virtually unbridled discretion in determining whether a human life should be taken or spared. The risk of arbitrary and capricious sentencing, specifically including the danger that racial prejudice would determine the fate of the defendant,* persuaded a majority of the Court in *Furman* that such capital sentencing schemes were unconstitutional. The two principal protections against such arbitrary sentencing that have been endorsed in our subsequent jurisprudence focus, respectively, on the eligibility determination and the actual sentencing decision.

First, as CHIEF JUSTICE REHNQUIST writing for the Court in *Lowenfield* v. *Phelps,* 484 U. S. 231 (1988), succinctly stated: "To pass constitutional muster, a capital sentencing scheme must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.'" *Id.,* at 244 (quoting *Zant* v. *Stephens,* 462 U. S., at 877). When only a narrow subclass of murderers can be subjected to the death penalty, the risk of cruel and unusual punishment—either because it is disproportionate to the severity of the offense or because its imposition may be influenced by unacceptable factors—is diminished. See *McCleskey* v. *Kemp,* 481 U. S. 279, 367 (1987) (STEVENS, J., dissenting). Because those risks can never be entirely eliminated, however, the Court has identified an ad-

---

*See Justice Douglas' concurring opinion, 408 U. S., at 249–251.

ditional safeguard to protect death-eligible defendants from the arbitrary imposition of the extreme penalty.

In *Lockett* v. *Ohio,* 438 U. S. 586, 602–605 (1978), Chief Justice Burger emphasized the importance of requiring the jury to make an individualized determination on the basis of the character of the individual and the circumstances of the crime. Insisting that the jury have an opportunity to consider all evidence *relevant* to a fair sentencing decision reduces the danger that they might otherwise rely on an irrelevant and improper consideration such as the race of the defendant. In *Zant,* even though the trial judge had incorrectly characterized the defendant's prior history of "assaultive offenses" as a statutory aggravating circumstance, we found no constitutional error because the evidence supporting that characterization was relevant and admissible. 462 U. S., at 887–889. We made it clear, however, that it would be error for a State to attach the "aggravating" label to, or otherwise authorize the jury to draw adverse inferences from, "factors that are constitutionally impermissible or totally irrelevant to the sentencing process, such as for example the race, religion, or political affiliation of the defendant." *Id.,* at 885.

The three penalty-phase factors in California's statute that are challenged in these cases do not violate that command. Matters such as the age of the defendant at the time of the crime, the circumstances of the crime, and the presence or absence of force or violence are, in my opinion, relevant to an informed, individualized sentencing decision. Under *Lockett,* the defendant has a right to have the sentencer consider favorable evidence on each of these subjects, and under *Zant* it is permissible for the prosecutor to adduce unfavorable evidence on the same subjects. If, as we held in *Zant,* it is not constitutional error for the trial judge to place an incorrect label on the prosecutor's evidence, it necessarily follows that refusing to characterize ambiguous evidence as

mitigating or aggravating is also constitutionally permissible. Indeed, as I have indicated, I think the identification of additional factors that are relevant to the sentencing decision reduces the danger that a juror may vote in favor of the death penalty because he or she harbors a prejudice against a class of which the defendant is a member.

Accordingly, given the assumption (unchallenged by these petitioners) that California has a statutory "scheme" that complies with the narrowing requirement defined in *Lowenfield* v. *Phelps,* 484 U. S., at 244, I conclude that the sentencing factors at issue in these cases are consistent with the defendant's constitutional entitlement to an individualized "determination that death is the appropriate punishment in a specific case." *Woodson* v. *North Carolina,* 428 U. S. 280, 305 (1976) (opinion of Stewart, Powell, and STEVENS, JJ.).

JUSTICE BLACKMUN, dissenting.

Adhering to my view that the death penalty cannot be imposed fairly within the constraints of our Constitution, see *Callins* v. *Collins,* 510 U. S. 1141, 1143 (1994), I would vacate petitioners' death sentences. Even if I did not hold this view, I would find that the three challenged factors do not withstand a meaningful vagueness analysis because "as a practical matter [they] fail to guide the sentencer's discretion." *Stringer* v. *Black,* 503 U. S. 222, 235 (1992).

## I

### A

The California capital punishment scheme does more than simply direct the sentencing jurors' attention to certain subject matters. It lists 11 factors and authorizes the jury to treat any of them as aggravating circumstances to be placed on death's side of the scale. Jurors are instructed that they "*shall* impose a death sentence if [they] conclud[e] that the aggravating circumstances outweigh the mitigating circumstances." Cal. Penal Code Ann. § 190.3 (West 1988). De-

spite the critical—even decisive—role these factors play in the determination of who actually receives the death penalty, jurors are given no guidance in how to consider them. We have stated: "A vague aggravating factor used in the weighing process . . . creates the risk that the jury will treat the defendant as more deserving of the death penalty than he might otherwise be by relying upon the existence of an illusory circumstance." *Stringer*, 503 U. S., at 235.

The majority introduces a novel distinction between "propositional" and "nonpropositional" aggravating circumstances. *Ante*, at 974. The majority acknowledges that the "distinction between the two is not always clear," *ante*, at 975; I find it largely illusory. The Court suggests, but does not make explicit, that propositional factors are those that "require a yes or a no answer to a specific question," while nonpropositional factors are those that "only poin[t] the sentencer to a subject matter." *Ibid.* Presumably, then, asking the jury whether "the murder was especially heinous, atrocious, or cruel" would be a propositional aggravator, while directing the sentencer to "the presence or absence of any especial heinousness, atrocity, or cruelty" would be a nonpropositional factor. I am at a loss to see how the mere rephrasing does anything more to channel or guide jury discretion. Nor does this propositional/nonpropositional distinction appear to play any role in the Court's decision. The Court nowhere discloses specifically where the line is drawn, on which side of it the three challenged factors fall, and what relevance, if any, this distinction should have to the Court's future vagueness analysis.[1]

---

[1] Nor does it matter for Eighth Amendment purposes that California uses one set of factors (the § 190.2 "special circumstances") to determine eligibility and another set (the § 190.3 "relevant factors") in the weighing or selection process. Whether an aggravator is used for narrowing, or for weighing, or for both, it cannot be impermissibly vague. See *Arave* v. *Creech*, 507 U. S. 463 (1993) (vagueness analysis applied to aggravating factor, even though remaining aggravating factor made defendant death

The more relevant distinction is not how an aggravating factor is presented, but what the sentencer is told to do with it. Where, as in Georgia, "aggravating factors as such have no specific function in the jury's decision whether a defendant who has been found to be eligible for the death penalty should receive it under all the circumstances of the case," *Stringer*, 503 U. S., at 229–230, we have not subjected aggravating circumstances to a vagueness analysis. See *Zant* v. *Stephens*, 462 U. S. 862, 873–874 (1983). In California, by contrast, where the sentencer is instructed to weigh the aggravating and mitigating circumstances, a vague aggravator creates the risk of an arbitrary thumb on death's side of the scale, so we analyze aggravators for clarity, objectivity, and principled guidance. See *Maynard* v. *Cartwright*, 486 U. S. 356 (1988); *Godfrey* v. *Georgia*, 446 U. S. 420 (1980); see also *Pensinger* v. *California*, 502 U. S. 930, 931 (1991) (O'CONNOR, J., dissenting from denial of certiorari) (observing that California, like Mississippi, "requires its juries to weigh aggravating and mitigating circumstances"); *Stringer*, 503 U. S., at 231 (difference between "nonweighing" States like Georgia and "weighing" States like California is "not one of 'semantics'") (citation omitted).

Each of the challenged California factors "leave[s] the sentencer without sufficient guidance for determining the presence or absence of the factor." *Espinosa* v. *Florida*, 505 U. S. 1079, 1081 (1992). Each of the three—circumstances of the crime, age, and prior criminal activity—has been exploited to convince jurors that just about anything is aggravating.

Prosecutors have argued, and jurors are free to find, that "circumstances of the crime" constitutes an aggravating factor because the defendant killed the victim for some purport-

---

eligible); *Sochor* v. *Florida*, 504 U. S. 527 (1992) (same); *Walton* v. *Arizona*, 497 U. S. 639 (1990) (same). The Court recognizes as much by subjecting the challenged factors to a vagueness analysis.

edly aggravating motive, such as money,[2] or because the defendant killed the victim for no motive at all;[3] because the defendant killed in cold blood,[4] or in hot blood;[5] because the defendant attempted to conceal his crime,[6] or made no attempt to conceal it;[7] because the defendant made the victim endure the terror of anticipating a violent death,[8] or because the defendant killed without any warning;[9] and because the defendant had a prior relationship with the victim,[10] or because the victim was a complete stranger.[11] Similarly, prosecutors have argued, and juries are free to find, that the age of the victim was an aggravating circumstance because the victim was a child, an adolescent, a young adult, in the prime of life, or elderly;[12] or that the method of killing was aggravating, because the victim was strangled, bludgeoned, shot, stabbed, or consumed by fire;[13] or that the location of

---

[2] *People* v. *Howard*, Cal. Sup. Ct. No. S004452, Brief for California Appellate Project as *Amicus Curiae* 14, n. 9, 17, n. 29 (hereinafter *Amicus* Brief).

[3] *People* v. *Edwards*, Cal. Sup. Ct. No. S004755, *id.*, at 15, n. 13, 17, n. 29.

[4] *People* v. *Visciotti*, Cal. Sup. Ct. No. S004597, *id.*, at 15, n. 15.

[5] *People* v. *Jennings*, Cal. Sup. Ct. No. S004754, *id.*, at 15, n. 16.

[6] *People* v. *Benson*, Cal. Sup. Ct. No. S004763, *id.*, at 15, n. 17.

[7] *People* v. *Morales*, Cal. Sup. Ct. No. S004552, *id.*, at 15, n. 18.

[8] *People* v. *Webb*, Cal. Sup. Ct. No. S006938, *id.*, at 16, n. 19.

[9] *People* v. *Freeman*, Cal. Sup. Ct. No. S004787, *id.*, at 18, n. 31.

[10] *People* v. *Padilla*, Cal. Sup. Ct. No. S0144964, *id.*, at 16, n. 25.

[11] *People* v. *Anderson*, Cal. Sup. Ct. No. S004385, *id.*, at 16, n. 26.

[12] *People* v. *Deere*, Cal. Sup. Ct. No. S004722, *id.*, at 17, n. 27 (victims were two and six); *People* v. *Bonin*, Cal. Sup. Ct. No. S004565, *ibid.* (victims were adolescents); *People* v. *Carpenter*, Cal. Sup. Ct. No. S004654, *ibid.* (victim was 20); *People* v. *Phillips*, 41 Cal. 3d 29, 63, 711 P. 2d 423, 444 (1985) (26-year-old victim was "in the prime of his life"); *People* v. *Melton*, Cal. Sup. Ct. No. S004518, *Amicus* Brief 17, n. 27 (victim was 77).

[13] *People* v. *Clair*, Cal. Sup. Ct. No. S004789, *id.*, at 17, n. 28 (strangulation); *People* v. *Kipp*, Cal. Sup. Ct. No. S004784, *ibid.* (same); *People* v. *Fauber*, Cal. Sup. Ct. No. S005868, *ibid.* (use of an axe); *People* v. *Benson*, Cal. Sup. Ct. No. S004763, *ibid.* (use of a hammer); *People* v. *Cain*, Cal. Sup. Ct. No. S006544, *ibid.* (use of a club); *People* v. *Jackson*, Cal. Sup. Ct. No. S010723, *ibid.* (use of a gun); *People* v. *Reilly*, Cal. Sup. Ct.

the killing was an aggravating factor, because the victim was killed in her own home, in a public bar, in a city park, or in a remote location.[14]  In short, because neither the California Legislature nor the California courts ever have articulated a limiting construction of this term, prosecutors have been permitted to use the "circumstances of the crime" as an aggravating factor to embrace the entire spectrum of facts present in virtually every homicide—something this Court condemned in *Godfrey* v. *Georgia,* 446 U. S. 420 (1980).  See *Maynard* v. *Cartwright,* 486 U. S., at 363 (the Court "plainly rejected the submission that a particular set of facts surrounding a murder, however shocking they might be, were enough in themselves, and without some narrowing principle to apply to those facts, to warrant the imposition of the death penalty").[15]

The defendant's age as a factor, applied inconsistently and erratically, similarly fails to channel the jurors' discretion. In practice, prosecutors and trial judges have applied this factor to defendants of virtually every age: in their teens, twenties, thirties, forties, and fifties at the time of the

No. S004607, *ibid.* (stabbing); *People* v. *Scott,* Cal. Sup. Ct. No. S010334, *ibid.* (fire).

[14] *People* v. *Anderson,* Cal. Sup. Ct. No. S004385, *id.,* at 18, n. 31 (victim's home); *People* v. *Freeman,* Cal. Sup. Ct. No. S004787, *ibid.* (public bar); *People* v. *Ashmus,* Cal. Sup. Ct. No. S004723, *ibid.* (city park); *People* v. *Carpenter,* Cal. Sup. Ct. No. S004654, *ibid.* (forested area); *People* v. *Comtois,* Cal. Sup. Ct. No. S017116, *ibid.* (remote, isolated location).

[15] Although we have required that jurors be allowed to consider "*as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death," *Lockett* v. *Ohio,* 438 U. S. 586, 604 (1978) (emphasis in original), we have never approved such unrestricted consideration of a circumstance in aggravation.  Similarly, while we approved the Georgia capital sentencing scheme, which permits jurors to consider all the circumstances of the offense and the offender, we did so in the context of a system in which aggravators performed no function beyond the eligibility decision.  See *Zant* v. *Stephens,* 462 U. S. 862, 873–874 (1983).

crime.[16]   Far from applying any narrowing construction, the California Supreme Court has described age as a "metonym for any age-related matter suggested by the evidence or by common experience or morality that might reasonably inform the choice of penalty."   *People* v. *Lucky*, 45 Cal. 3d 259, 302, 753 P. 2d 1052, 1080 (1988), cert. denied, 488 U. S. 1034 (1989).

Nor do jurors find meaningful guidance from "the presence or absence of criminal activity by the defendant which involved the use or attempted use of force or violence."   Although the California Supreme Court has held that "criminal" is "limited to conduct *that violates a penal statute*," *People* v. *Wright*, 52 Cal. 3d 367, 425, 802 P. 2d 221, 259 (1990) (emphasis in original), and that "force or violence" excludes violence to property, *People* v. *Boyd*, 38 Cal. 3d 762, 700 P. 2d 782 (1985), that court has not required such an instruction, and petitioner Tuilaepa's jurors were not so instructed. This left the prosecution free to introduce evidence of "trivial incidents of misconduct and ill temper," *id.*, at 774, 700 P. 2d, at 791, and left the jury free to find an aggravator on that basis.[17]

---

[16] See, *e. g.*, *People* v. *Williams*, Cal. Sup. Ct. No. S004522, *id.*, at 20, n. 34 (teens); *People* v. *Avena*, Cal. Sup. Ct. No. S004422, *ibid.* (teens); *People* v. *Bean*, 46 Cal. 3d 919, 952, n. 18, 760 P. 2d 996, 1017, n. 18 (1988) (age 20); *People* v. *Coleman*, 48 Cal. 3d 112, 153–154, 768 P. 2d 32, 55–56 (1989) (age 22), cert. denied, 494 U. S. 1038 (1990); *People* v. *Gonzalez*, 51 Cal. 3d ,1179, 1233, 800 P. 2d 1159, 1187 (1990) (age 31), cert. denied, 502 U. S. 835 (1991); *People* v. *McLain*, 46 Cal. 3d 97, 111–112, 757 P. 2d 569, 576–577 (1988) (age 41), cert. denied, 489 U. S. 1072 (1989); *People* v. *Douglas*, 50 Cal. 3d 468, 538, 788 P. 2d 640, 681 (1990) (age 56), cert. denied, 498 U. S. 1110 (1991).

[17] Even with the limiting construction, "prior criminal activity involving force or violence" is far more open ended than factors invalidated by other state courts as vague or subjective.   See, *e. g.*, *Arnold* v. *State*, 236 Ga. 534, 540, 224 S. E. 2d 386, 391 (1976) (invalidating aggravating circumstance that the " 'murder . . . was committed by a person . . . who has a substantial history of serious assaultive convictions' "); *State* v. *David*, 468

No less a danger is that jurors—or even judges—will treat the mere absence of a mitigator as an aggravator, transforming a neutral or factually irrelevant factor into an illusory aggravator.[18] Although the California Supreme Court has ruled that certain of the factors can serve only as mitigators,[19] it has not required that the jury be so instructed. See, e. g., *People* v. *Raley*, 2 Cal. 4th 870, 919, 830 P. 2d 712, 744–745 (1992), cert. denied, 507 U. S. 945 (1993). Nor has that court restricted jury instructions to those aggravating

So. 2d 1126, 1129–1130 (La. 1985) (invalidating aggravating circumstance of "significant" history of criminal conduct).

[18] Judges, as well as juries, have fallen into this trap. See, e. g., *People* v. *Kaurish*, 52 Cal. 3d 648, 717, 802 P. 2d 278, 316 (1990) (trial judge concluded that factor (h), dealing with a defendant's impaired capacity to appreciate the criminality of his actions, was an aggravating factor because defendant did not have diminished capacity or other impairment), cert. denied, 502 U. S. 837 (1991); *People* v. *Hamilton*, 48 Cal. 3d 1142, 1186, 774 P. 2d 730, 757 (1989) (trial court concluded that 10 of 11 factors were aggravating, including factors (d)–(h) and (j)), cert. denied, 494 U. S. 1039 (1990).

[19] The factors that can serve only as mitigators are:

"(d) Whether or not the offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.

"(e) Whether or not the victim was a participant in the defendant's homicidal act or consented to the homicidal act.

"(f) Whether or not the offense was committed under circumstances which the defendant reasonably believed to be a moral justification or extenuation for his conduct.

"(g) Whether or not defendant acted under extreme duress or under the substantial domination of another person.

"(h) Whether or not at the time of the offense the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease and defect, or the [e]ffects of intoxication.

"(i) The age of the defendant at the time of the crime.

"(j) Whether or not the defendant was an accomplice to the offense and his participation in the commission of the offense was relatively minor."

Cal. Penal Code Ann. § 190.3 (West 1988); see also *Amicus* Brief 22–24, and nn. 47, 48, and cases cited therein.

factors that are factually relevant to the case.[20] Clearly, some of the mitigating circumstances are so unusual that treating their absence as an aggravating circumstance would make them applicable to virtually all murderers. See *People* v. *Davenport*, 41 Cal. 3d 247, 289, 710 P. 2d 861, 888 (1985) (most murder cases present the absence of the mitigating circumstances of moral justification and victim participation). An aggravating factor that exists in nearly every capital case fails to fulfill its purpose of guiding the jury in distinguishing "those who deserve capital punishment from those who do not." *Arave* v. *Creech*, 507 U. S. 463, 474 (1993). Moreover, a process creating the risk that the absence of mitigation will count as aggravation artificially inflates the number of aggravating factors the jury weighs, "creat[ing] the possibility not only of randomness but also of bias in favor of . . . death." *Stringer* v. *Black*, 503 U. S., at 236.

In short, open-ended factors and a lack of guidance to regularize the jurors' application of these factors create a system in which, as a practical matter, improper arguments can be made in the courtroom and credited in the jury room. I am at a loss to see how these challenged factors furnish the "'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'" *Walton* v. *Arizona*, 497 U. S. 639, 651 (1990) (SCALIA, J., concurring in part and dissenting in part), quoting *Godfrey* v. *Georgia*, 446 U. S., at 428 (some internal quotation marks omitted).

## B

One of the greatest evils of leaving jurors with largely unguided discretion is the risk that this discretion will be

---

[20] Although the trial judge at petitioner Tuilaepa's trial instructed the jury on only those factors that were factually relevant, the jury at petitioner Proctor's trial was instructed on all of the factors in § 190.3. The prosecutor argued that 9 of the 11 factors were aggravating. Brief for Petitioner in No. 93–5161, pp. 4–5.

exercised on the basis of constitutionally impermissible considerations—primary among them, race. Racial prejudice is "the paradigmatic capricious and irrational sentencing factor." *Graham* v. *Collins*, 506 U. S. 461, 484 (1993) (THOMAS, J., concurring). In part to diminish the danger that a sentencer will "attac[h] the 'aggravating' label to factors that are constitutionally impermissible or totally irrelevant to the sentencing process," *Zant* v. *Stephens*, 462 U. S., at 885, this Court has required that a sentencer's discretion be curbed and informed by "clear and objective standards," *Gregg* v. *Georgia*, 428 U. S. 153, 198 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.) (internal quotation marks omitted).

Because the "circumstances of the crime" factor lacks clarity and objectivity, it poses an unacceptable risk that a sentencer will succumb to either overt or subtle racial impulses or appeals. This risk is not merely theoretical. For far too many jurors, the most important "circumstances of the crime" are the race of the victim or the defendant. See *Mc-Cleskey* v. *Kemp*, 481 U. S. 279, 320 (1987) (Brennan, J., dissenting); see also General Accounting Office, Report to Senate and House Committees on the Judiciary, Death Penalty Sentencing: Research Indicates Pattern of Racial Disparities (Feb. 1990) (surveying and synthesizing studies and finding a "remarkably consistent" conclusion that the race of the victim influenced the likelihood of being charged with capital murder or receiving the death penalty in 82% of cases), reprinted at 136 Cong. Rec. 12267–12268 (1990).

The California capital sentencing scheme does little to minimize this risk. The "circumstances of the crime" factor may be weighed in aggravation in addition to the applicable special circumstances. Cal. Penal Code Ann. § 190.3(a) (West 1988) (the trier of fact shall take into account "[t]he circumstances of the crime of which the defendant was convicted in the present proceeding *and* the existence of any special circumstances found to be true") (emphasis added).

The special circumstances themselves encompass many of the factors generally recognized as aggravating, including multiple-murder convictions; commission of the murder in relation to another felony; the "especially heinous, atrocious, or cruel" nature of the murder; and the relevant identity of the victim (as a law enforcement officer, a witness to a crime, a judge, a prosecutor, or a public official). The statute, therefore, invites the jurors to speculate about, and give aggravating weight to, unspecified circumstances apart from these.

Nor has the California Supreme Court attempted to limit or guide this ranging inquiry. Far from it. That court has concluded that the "circumstances of the crime" factor extends beyond "merely the immediate temporal and spatial circumstances of the crime," *People* v. *Edwards*, 54 Cal. 3d 787, 833, 819 P. 2d 436, 465 (1991), and leaves "the sentencer free to evaluate the evidence in accordance with his or her own subjective values," *People* v. *Tuilaepa*, 4 Cal. 4th 569, 595, 842 P. 2d 1142, 1158 (1992) (case below). The court has even warned that it has not yet "explore[d] the outer reaches of the evidence admissible as a circumstance of the crime." *People* v. *Edwards*, 54 Cal. 3d, at 835, 819 P. 2d, at 467. Thus, the "unique opportunity for racial prejudice to operate but remain undetected," *Turner* v. *Murray*, 476 U. S. 28, 35 (1986), exists unchecked in the California capital sentencing scheme. This does not instill confidence in the jury's decision to impose the death penalty on petitioner Tuilaepa, who is Samoan, and whose victim was white.

## II

Although the Court today rejects a well-founded facial challenge to 3 of the 11 factors that permit California jurors to select from among capital defendants those who will receive the death penalty, it has not given the California system a clean bill of health. Its unwillingness to conclude that these factors are valid on their face leaves the door open to a challenge to the application of one of these factors in such

a way that the risk of arbitrariness is realized.[21]   The cases before us, for example, do not clearly present a situation in which the absence of a mitigator was treated as an aggravator.

Additionally, the Court's opinion says nothing about the constitutional adequacy of California's eligibility process, which subjects a defendant to the death penalty if he is convicted of first-degree murder and the jury finds the existence of one "special circumstance."[22]   By creating nearly 20 such special circumstances, California creates an extraordinarily large death pool.   Because petitioners mount no challenge to these circumstances, the Court is not called on to determine that they collectively perform sufficient, meaningful narrowing.   See *Zant* v. *Stephens*, 462 U. S. 862 (1983).

Of particular significance, the Court's consideration of a small slice of one component of the California scheme says nothing about the interaction of the various components— the statutory definition of first-degree murder, the special circumstances, the relevant factors, the statutorily required weighing of aggravating and mitigating factors, and the availability of judicial review, but not appellate proportionality review—and whether their end result satisfies the Eighth Amendment's commands.   The Court's treatment today of the relevant factors as "selection factors" alone rests on the

---

[21] Such a challenge would require something more than merely pointing to others who committed similar offenses and did not receive the death penalty, *Lewis* v. *Jeffers*, 497 U. S. 764 (1990), but it is not hard to imagine more pronounced erratic outcomes.

[22] The special circumstances include premeditated and deliberate murder; felony murder based on nine felonies; the infliction of torture; that the murder was especially heinous, atrocious, or cruel; that the victim was killed because of his race, religion, or ethnic origin; and the identity of the victim, including that he was a peace officer, a federal law enforcement officer, a firefighter, a witness to a crime, a prosecutor or assistant prosecutor, a former or current local, state, or federal judge, or an elected or appointed local, state, or federal official.   Cal. Penal Code Ann. § 190.2 (West 1988).

assumption, not tested, that the special circumstances perform all of the constitutionally required narrowing for eligibility. Should that assumption prove false, it would further undermine the Court's approval today of these relevant factors.

Similarly, in *Pulley* v. *Harris*, 465 U. S. 37, 51 (1984), the Court's conclusion that the California capital sentencing scheme was not "so lacking in other checks on arbitrariness that it would not pass constitutional muster without comparative proportionality review" was based in part on an understanding that the application of the relevant factors "'provide[s] jury guidance and lessen[s] the chance of arbitrary application of the death penalty,'" thereby "'guarantee[ing] that the jury's discretion will be guided and its consideration deliberate.'" *Id.*, at 53, quoting *Harris* v. *Pulley*, 692 F. 2d 1189, 1194, 1195 (CA9 1982). As litigation exposes the failure of these factors to guide the jury in making principled distinctions, the Court will be well advised to reevaluate its decision in *Pulley* v. *Harris*.

In summary, the Court isolates one part of a complex scheme and says that, assuming that all the other parts are doing their job, this one passes muster. But the crucial question, and one the Court will need to face, is how the parts are working together to determine with rationality and fairness who is exposed to the death penalty and who receives it.

## III

For two decades now, the Court has professed a commitment to guiding sentencers' discretion so as to "minimize the risk of wholly arbitrary and capricious action," *Gregg* v. *Georgia*, 428 U. S., at 189 (joint opinion of Stewart, Powell, and STEVENS, JJ.), and to achieve principled distinctions between those who receive the death penalty and those who do not, see, *e. g., Espinosa* v. *Florida*, 505 U. S. 1079 (1992); *Shell* v. *Mississippi*, 498 U. S. 1 (1990); *Maynard* v. *Cart-*

*wright,* 486 U. S. 356 (1988). The Court's approval today of these California relevant factors calls into question the continued strength of that commitment. I respectfully dissent.