

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00843-CR

Charles B. **HARRIS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 11-0559-CR
Honorable Gary L. Steel, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:       Sandee Bryan Marion, Justice
               Rebeca C. Martinez, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:  March 19, 2014

AFFIRMED

Charles Harris was convicted of capital murder for the killing of Vicente Garcia, a police informant, and sentenced to a term of life imprisonment without parole in the Texas Department of Criminal Justice. On appeal, he contends that Texas's capital murder statute is unconstitutional as applied to him. We affirm.

## BACKGROUND

Vicente Garcia was a paid confidential informant who worked for both federal and local law enforcement agencies. As part of his informant duties, Garcia helped secure criminal charges

against Beatrice Giles for selling drugs. Giles lived with Harris and had three children with him. After Giles was indicted on federal drug charges, she became aware of Garcia's status as an informant in the case against her. In January 2007, Garcia's body was found floating in Cibolo Creek with bullet holes in his neck and head, and the medical examiner concluded that Garcia's death was a homicide. Harris, Giles, and members of their families were charged with various degrees of responsibility for Garcia's homicide.

The State charged Harris with capital murder and conspiracy to commit capital murder, alleging that he murdered Garcia while also in the course of committing the offense of retaliation against Garcia. The State elected not to seek the death penalty.

The evidence showed that on the night of December 22, 2006, Ronnie James, who is a cousin of Giles, and Garcia left a party together to purchase drugs. When James arrived at Giles and Harris's home, James told them that he had Garcia with him and asked for a gun. Giles retrieved a gun and gave it to Harris, who then left with James. Later that night, Harris and James drove to Giles's father's home with Garcia's body. Over the next few days, Harris, James, James's brother, and Giles's father planned and worked together to dispose of Garcia's body. They eventually tied Garcia's body to a weight and dumped it into Cibolo Creek.

The evidence also showed that Harris was aware that Garcia had acted as an informant in the case against Giles.

Harris was convicted of capital murder and conspiracy to commit capital murder, either as a principal or as a party. Harris was sentenced to life imprisonment without parole for capital murder, and the State did not ask the court to sentence on the conspiracy conviction. Harris now appeals.

**DISCUSSION**

Harris raises four points of error in his brief: (1) Texas's capital murder statute is unconstitutional as applied to him under the Eighth and Fourteenth Amendments; (2) the indictment against him violated due process; (3) the indictment against him was insufficient to allege capital murder and conspiracy to commit capital murder; and (4) the evidence at trial was insufficient to prove he committed capital murder and conspiracy to commit capital murder.

Harris contends Texas's capital murder statute is unconstitutional as applied to him because there was no showing of felonious criminal conduct other than the act that caused Garcia's death and thus there was no justification for the imposition of a more severe sentence on him as compared to others found guilty of murder. Harris does not provide any separate argument or authorities for his second, third, and fourth points of error, and they appear to be based on his as-applied constitutional challenge.

Harris was charged and convicted of committing capital murder under section 19.03(a)(2) of the Texas Penal Code. Under that section, a person commits capital murder if he intentionally commits murder while in the course of committing certain felonies, including retaliation. TEX. PENAL CODE ANN. § 19.03(a)(2) (West Supp. 2013). Retaliation is committed when a person intentionally or knowingly harms another by an unlawful act in retaliation for that person's status or service as an informant. TEX. PENAL CODE ANN. § 36.06(a)(1)(A) (West 2011). Murder is committed when a person intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). Thus under section 19.03(a)(2), the State was required to prove:

1) Harris intentionally caused the death of Garcia; and

2) Harris did so while in the course of intentionally or knowingly harming Garcia by an unlawful act in retaliation for Garcia's status as an informant.

Harris's constitutional argument is, essentially, that the State's reliance on Harris's act of shooting Garcia cannot be used to prove both the "harm" element of retaliation and the "causation" element of murder in order to elevate murder to capital murder. He terms the State's use of the act of shooting to prove both elements as "bootstrapping."

"To pass constitutional muster, a capital sentencing scheme must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.'" *Lowenfield v. Phelps*, 484 U.S. 231, 244 (1988) (quoting *Zant v. Stephens*, 462 U.S. 862, 877 (1983)). There are two required components for a capital sentencing scheme to be constitutional: an eligibility decision and a selection decision. *See Tuilaepa v. California*, 512 U.S. 967, 971 (1994). Harris's as-applied constitutional challenge relates to the eligibility decision.

For a defendant to be constitutionally eligible for the death penalty, he must be convicted of a crime for which the death penalty is a proportionate punishment. *Id.* Therefore, "[t]o render a defendant eligible for the death penalty in a homicide case . . . the trier of fact must convict the defendant of murder and find one 'aggravating circumstance' (or its equivalent) at either the guilt or penalty phase." *Id.* at 972–73. "The aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both)." *Id.* at 973. The circumstance may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder." *Id.*

Under Texas's capital sentencing scheme, a jury may convict a defendant of capital murder if the evidence shows that the person committed murder and one of nine aggravating circumstances existed. *See* TEX. PENAL CODE ANN. § 19.03 (West Supp. 2013). If the defendant is convicted and the State seeks the death penalty, the jury hears evidence concerning aggravating and mitigating

circumstances before determining whether the defendant should be sentenced to death. *See* TEX. CODE CRIM. PROC. art. 37.071 (West Supp. 2013).

"A litigant raising only an 'as applied' challenge concedes the general constitutionality of the statute, but asserts that the statute is unconstitutional as applied to his particular facts and circumstances." *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011). "An 'as applied' challenge is brought during or after a trial on the merits, for it is only then that the trial judge and reviewing courts have the particular facts and circumstances of the case needed to determine whether the statute or law has been applied in an unconstitutional manner." *Id.* Looking to the facts and circumstances of Harris's case, we conclude that Texas's capital sentencing scheme operated constitutionally in Harris's case.

To pass constitutional muster, a capital sentencing scheme must identify an aggravating circumstance that renders only a subclass of murders eligible for capital sentencing and is not unconstitutionally vague. In this case, the alleged aggravating circumstance was that Harris harmed Garcia because he was an informant and was in the course of harming Garcia when he caused Garcia's death. The evidence at trial supports the jury's findings that

1) Harris intentionally caused the death of Garcia by shooting him; and

2) Harris caused Garcia's death while in the course of intentionally or knowingly harming Garcia by the unlawful act of shooting Garcia in retaliation for Garcia's status as an informant against Giles.

The jury was able to find that Harris was part of a subclass of murderers eligible for the death penalty. The capital sentencing statute thus operated in a constitutional way to identify Harris as deserving a more severe sentence than others found guilty of murder.

Harris is unable to provide any direct authority for his "bootstrapping" argument that his conviction for capital murder must be based on two separate acts in order to reasonably justify the

imposition of a more severe sentence on him as compared to others found guilty of murder. Instead, he discusses cases in which similar arguments have been rejected, and then attempts to distinguish his argument from the rejected arguments. *See, e.g., Homan v. State*, 19 S.W.3d 847, 848–49 (Tex. Crim. App. 2000); *Muniz v. State*, 851 S.W.2d 238, 243–46 (Tex. Crim. App. 1993); *Fearance v. State*, 771 S.W.2d 486, 492–95 (Tex. Crim. App. 1988). Moreover, the statute did operate in such a way as to constitutionally justify classing Harris as part of a class of murderers eligible for a more severe punishment. The offense of retaliation has a specific intent element not present in the murder statute. By finding that Harris unlawfully harmed Garcia on account of his status as an informant against Giles, the statute required the jury to find an aggravating circumstance that justified the potential imposition of the death penalty on Harris.

Harris argues that the Legislature did not intend to protect informants as a class under the capital murder statute. He points out that in section 19.03(a)(9) the capital murder statute explicitly protects certain persons as a class, such as judges, but does not include informants. *See* TEX. PENAL CODE ANN. § 19.03(a)(9) (West Supp. 2013). He contends that any holding by this court that effectively protects informants as a class through section 19.03(a)(2) contravenes express legislative intent not to protect informants as a class under section 19.03(a)(9). His argument is unpersuasive. "A central purpose of the retaliation statute is to encourage a specified class of citizens—which includes public servants, witnesses, prospective witnesses, and informants—to perform vital public duties without fear of retribution." *Cada v. State*, 334 S.W.3d 766, 771 (Tex. Crim. App. 2011). By listing retaliation as one of the several felonies that aggravate murder to capital murder, the Legislature manifestly intended to further increase the protections offered to informants under the retaliation statute. Whether the Legislature chooses to do so via section 19.03(a)(2) or section 19.03(a)(9) is not material to the constitutional challenge raised by Harris.

## CONCLUSION

We affirm the trial court's judgment.

Luz Elena D. Chapa, Justice

Do Not Publish