**UNITED STATES of America,**

v.

**Michael Antonio NATSON, Defendant.**

No. 4:05–CR–21 (CDL).

United States District Court,
M.D. Georgia,
Columbus Division.

Aug. 10, 2006.

John L. Lynch, Columbus, GA, Rebecca K. Connally, Office of the Staff Judge Advocate, Ft. Benning, GA, for United States of America.

## ORDER

LAND, District Judge.

The Court presently has pending before it Defendant's consolidated Motion to (1) Declare the Federal Death Penalty Act Unconstitutional, to (2) Dismiss the "Special Findings" from the Indictment, and to (3) Strike the Notice of Intent to Seek the Death Penalty (Doc. 40) and Defendant's Motion to Trifurcate Jury Deliberations (Doc. 41). Defendant's Motion to Trifurcate Jury Deliberations (Doc. 41), which the Government does not oppose, is granted. For the following reasons, Defendant's consolidated motion to avoid the death penalty (Doc. 40) is denied.

## BACKGROUND

A grand jury returned a three count Indictment, charging Defendant with Murder (Count One), 18 U.S.C. § 1111, Feticide (Count Two), O.C.G.A. § 16–5–80, 18

U.S.C. §§ 7(3) and 13, and Use of a Firearm During a Crime of Violence (Count Three), 18 U.S.C. § 924(c)(1), (j).[1] The Indictment alleges that on September 12, 2003, Defendant unlawfully shot and killed Ardena Marie Carter on Fort Benning Military Reservation, that he likewise killed Ms. Carter's unborn child, and that the murder of Ms. Carter was accomplished by using a firearm.

In addition to alleging the essential elements of each of the three counts in the Indictment, the grand jury made the following special findings:

1. The Defendant was over 18 years old at the time of the offense.

2. The Defendant intentionally killed Ms. Carter.

3. The Defendant intentionally inflicted serious bodily injury which resulted in the death of Ms. Carter.

4. The Defendant intentionally participated in an act, contemplating that the life of Ms. Carter, who was not a participant in the offense, would be taken and that lethal force would be used against her which would directly result in her death.

5. The Defendant intentionally and specifically engaged in an act of violence which he knew would create a grave risk of death to his victim, such that his participation in the act constituted a reckless disregard for human life and directly resulted in the death of his victim, Ms. Carter.

6. Ms. Carter was particularly vulnerable because she was 24 weeks pregnant at the time of the offense.

7. The Defendant killed Ms. Carter after substantial planning and premeditation to cause her death.

On December 8, 2005, the Government filed its Notice of Intent to Seek the Death Penalty regarding Counts One and Three of the Indictment (Doc. 32). In its Notice, the Government notified the Defendant that it would seek to prove that Defendant possessed the necessary intent/mental state required by 18 U.S.C. § 3591(a)(2)(A)-(D) for the imposition of the death penalty,[2] that two statutory aggravating factors exist in support of the imposition of the death penalty,[3] and that three non-statutory aggravating factors exist in support of the imposition of the death penalty.[4]

Defendant filed the pending motions seeking to have this Court determine that the Government could not seek the death penalty in this case for the following reasons:

1. The Federal Death Penalty Statute is unconstitutional on its face under the Sixth Amendment to the United States

---

1. The Indictment was filed on June 16, 2005.

2. The Government simply recited the special findings from the Indictment stated as 1 through 5 *supra*.

3. The Government recited from the Indictment's special findings that Defendant killed Ms. Carter after substantial planning and premeditation (18 U.S.C. § 3592(c)(9)) and that the victim was particularly vulnerable due to her pregnancy (18 U.S.C. § 3592(c)(11)).

4. The non-statutory aggravating factors described in the Notice included the impact of the offense upon the victim and her family, the Defendant's continued dangerousness based upon the nature of the offenses and his lack of remorse, and Defendant's intentional termination of Ms. Carter's pregnancy through the acts described in the Indictment.

Constitution and the Supreme Court's interpretation of the Sixth Amendment in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and *U.S. v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) because it does not require that a jury find *beyond a reasonable doubt* that the aggravating factors outweigh the mitigating factors before a sentence of death can be imposed.

2. The Indictment violates the Fifth and Sixth Amendments because (1) the grand jurors were not informed that the consequences of their findings could include the imposition of the death penalty, and (2) the Indictment failed to allege that the aggravating factors outweigh the mitigating factors.

3. The Notice of Intent to Seek the Death Penalty fails to provide the notice required by the Constitution and 18 U.S.C. § 3593(a) because it does not sufficiently state all of the evidence supporting the Government's allegations regarding mental state and aggravating factors.

4. The Indictment and Notice of Intent to Seek the Death Penalty improperly allege the statutory aggravating factors of "substantial planning and premeditation" and "vulnerability of victim" because these two factors do not adequately narrow the category of defendants eligible to receive the death penalty. These factors are thus unconstitutionally vague under the Eighth Amendment and do not otherwise apply here.

5. The Notice of Intent to Seek the Death Penalty improperly alleges as a non-statutory aggravating factor future dangerousness. Application of this factor results in an arbitrary and capricious imposition of a sentence using unreliable evidence in violation of the Eighth and Fourteenth Amendments. Additionally, relying upon Defendant's lack of remorse violates his right against self-incrimination under the Fifth Amendment.

6. The imposition of the death penalty on both Counts One and Three violates Defendant's rights under the Double Jeopardy Clause, the Eighth Amendment, and the Due Process Clause because it impermissibly permits multiple punishments for the same criminal conduct and will impermissibly skew the jury's deliberative process toward death.

7. The Notice of Intent to Seek the Death Penalty impermissibly alleges multiple mental states which will promote a skewed consideration of the aggravating circumstances during the jury's balancing of the aggravating factors with the mitigating factors.

The Court examines each of these contentions in turn and ultimately concludes that they must be rejected.

## DISCUSSION

A. *The Federal Death Penalty Act ("FDPA") Framework*

To be eligible for the death penalty under the FDPA, 18 U.S.C. § 3591 et seq., a defendant must first be found guilty of a death penalty eligible crime beyond a reasonable doubt by a unanimous jury. 18 U.S.C. § 3591(a)(2). Murder is a death penalty eligible crime. *See* 18 U.S.C. § 1111(b). After finding a defendant guilty of a death penalty eligible crime, a jury must make several findings before it may consider imposing the death penalty. First, it must find the existence of at least one of four statutory mens rea require-

ments. *See* 18 U.S.C. § 3591(a)(2).[5] If the jury finds one of the mens rea requirements beyond a reasonable doubt, it must then find that at least one of sixteen statutory aggravating factors exists beyond a reasonable doubt. *See* 18 U.S.C. § 3592(c).[6] Only after the jury finds beyond a reasonable doubt that (1) the defendant is guilty of the death penalty eligible offense, that (2) the defendant possessed the necessary mens rea, and that (3) at least one statutory aggravating factor exists, is the defendant then death penalty eligible.[7]

If a defendant is found to be death penalty eligible based upon these findings, the jury then weighs the aggravating factors, both statutory and non-statutory,[8] against any mitigating factors to determine whether the aggravating factors sufficiently outweigh the mitigating factors to justify a sentence of death. 18 U.S.C. § 3593(e). During this final phase, the rules of evidence are relaxed, but the Government still retains the burden of proving any aggravating factor beyond a reason-

able doubt. 18 U.S.C. § 3593(c). Although the aggravating factors must be found beyond a reasonable doubt, the FDPA is silent as to whether the jury must find beyond a reasonable doubt that the aggravating factors *outweigh* the mitigating factors. The FDPA simply states that "the jury ... shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death...." 18 U.S.C. § 3593(e). "Based upon this consideration, the jury by unanimous vote ... shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some lesser sentence." *Id.*

### B. *Defendant's Contentions*

#### 1. *Unconstitutionality of FDPA*

■ . Defendant argues that since the FDPA does not require as a precondition for the imposition of the death penalty that the jury in the final balancing phase find

---

**5.** To be death penalty eligible, the jury must find the defendant:
 (A) intentionally killed the victim;
 (B) intentionally inflicted serious bodily injury that resulted in the death of the victim;
 (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or
 (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.
 18 U.S.C. § 3591(a)(2).

**6.** The statutory aggravating factors relied upon by the Government in this case in its

Notice of Intent to Seek the Death Penalty are "substantial planning and premeditation," 18 U.S.C. § 3592(c)(9), and "vulnerability of victim," 18 U.S.C. § 3592(c)(11).

**7.** The statute also requires that the defendant be at least 18 years old at the time of the offense to be eligible for the death penalty. 18 U.S.C. § 3591(a).

**8.** The statute specifically lists sixteen aggravating factors which are generally referred to as the statutory aggravating factors and then provides that the jury "may consider whether any other aggravating factor for which notice has been given exists." 18 U.S.C. § 3592(c). These "other" aggravating factors are generally referred to as "non-statutory" aggravating factors.

*beyond a reasonable doubt* that the aggravating factors outweigh the mitigating factors, then the statute is unconstitutional on its face under the Sixth Amendment as interpreted in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and its progeny, *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Although Defendant is correct that the plain language of the FDPA does not require that the jury find beyond a reasonable doubt that the aggravating factors outweigh the mitigating ones before considering the recommendation of a death sentence, there is likewise nothing in the statute to prohibit that burden of proof from being applied. The FDPA is simply silent on the issue. Therefore, even if *Apprendi*, et al., requires that a jury find beyond a reasonable doubt that the aggravating factors outweigh the mitigating ones before death can be imposed, the absence of such an express requirement in the statutory language does not make the FDPA unconstitutional on its face. *See United States v. Brown*, 441 F.3d 1330, 1367 (11th Cir.2006) (rejecting contention that FDPA is unconstitutional on its face under the Indictment Clause because it does not expressly require Government to charge aggravating factors in indictment). Accordingly, the

Court finds that the FDPA is not unconstitutional on its face.

Having answered the easy question, the Court must next decide whether it is necessary to answer the more difficult one— whether the FDPA is unconstitutional in its application if a jury is not required to conduct its final phase balancing using a "beyond reasonable doubt" standard. Judicial prudence counsels us to resolve only those prickly constitutional issues that must be resolved and to decide them only when they need deciding. Although the Court could postpone the resolution of this issue until the time of trial when it must determine how to charge the jury on its duty during its deliberations, it is unlikely that the answer will be more readily apparent then than it is now. Therefore, with some trepidation, the Court ventures deeper into "*Apprendi Land*." [9]

 It is now clear that "capital defendants ... are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Ring v. Arizona*, 536 U.S. 584, 589, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). If an "increase in a defendant's authorized punishment [is made] contingent on the finding of a fact, that fact—no matter how [it is labeled]—must be found by a jury beyond a reasonable doubt." *Id.* at 602, 122 S.Ct. 2428 (citing *Apprendi*, 530 U.S. at 482–83, 120 S.Ct. 2348). In *Ring*, the Supreme Court analyzed the Arizona death penalty statute through the *Apprendi* lens. The Arizona statute authorized a death sentence only if a judge found the existence of at least one aggravating factor beyond a reasonable doubt. Under Arizona law, a jury did not make

---

**9.** The Court borrows the *"Apprendi* Land*"* reference with full attribution. *See Ring*, 536

U.S. at 613, 122 S.Ct. 2428 (Scalia, concurring).

this determination. Based solely on the jury's findings in *Ring,* the defendant's maximum sentence would have been life in prison. The Supreme Court concluded that the aggravating factor determination, which was necessary to impose the death penalty, must be entrusted to a jury. Since the Arizona statute placed that responsibility with the judge, the Supreme Court found it unconstitutional. *Id.* at 597, 122 S.Ct. 2428.

■ The Defendant in the present case argues that a death sentence under the FDPA can only be imposed after the fact finder balances the aggravating factors against the mitigating factors and determines that the sentence of death is justified because the aggravating factors sufficiently outweigh the mitigating ones. While the FDPA entrusts this decision to a jury, it does not specify the burden of proof applicable in reaching this profound conclusion. Defendant maintains that if that burden is more relaxed than proof "beyond a reasonable doubt," then its application is unconstitutional under *Apprendi* and *Ring.*

The Government responds that the FDPA requires a jury to make the following findings beyond a reasonable doubt before it can consider the death penalty: (1) that the defendant is guilty of a death penalty eligible offense; (2) that the defendant possessed the requisite mens rea; and (3) that at least one statutory aggravating factor exists. The Government further points out that if the jury relies upon any additional non-statutory aggravating factors, those must likewise be found by the jury beyond a reasonable doubt. The Government argues that this framework protects a defendant's constitutional right to have a jury decide all facts beyond a reasonable doubt that have the effect of

increasing his maximum sentence. Thus, according to the Government, the FDPA successfully navigates around the legal thickets often found in *"Apprendi* Land."

In the Government's view, a defendant convicted of a death penalty eligible offense becomes eligible for and exposed to the death penalty the moment a jury finds the requisite statutory mens rea plus a statutory aggravating factor. At that precise moment, the maximum penalty to which the defendant is exposed is death. Therefore, whatever happens after that moment cannot increase the defendant's punishment in any way. Under this argument, the final phase—in which the jury balances the aggravating factors with the mitigating ones to determine whether death should be imposed—involves a consideration of what the Government labels as "sentencing factors" which do not increase the defendant's ultimate punishment.

Mindful of the Supreme Court's admonition to avoid the labeling trap, the Court must focus not on whether something is labeled a "sentencing factor" but on whether the effect of this final phase balancing is to subject a defendant to a more severe sentence than he would otherwise be exposed to if this balancing were not performed. *See* 530 U.S. at 494, 120 S.Ct. 2348 (explaining that the dispositive question "is not one of form, but of effect"). In other words, can a defendant be given a death sentence absent a jury's determination that the aggravating factors outweigh the mitigating ones? The undisputed answer is no. A jury must find that the aggravating/mitigating scale tips in favor of death for the ultimate penalty to be imposed. That finding is absolutely necessary to expose the defendant to death. If the jury finds a death penalty eligible offense, plus the requisite intent, plus an aggravating factor, that moves the defen-

dant closer to the death penalty. However, the death penalty cannot be imposed unless and until the jury makes that final finding that the aggravating factors outweigh the mitigating factors.

If the Court were mapping its own course through *"Apprendi* Land," it would be inclined to find that the jury's factual determination that the aggravating factors outweigh the mitigating factors must be made beyond a reasonable doubt. The Court, of course, does not write upon a blank slate and must predict what the Court of Appeals would do based upon existing precedent. Although the Court has been unable to locate any precedent addressing the precise issue the Court faces today, the Court concludes that the Eleventh Circuit's rationale in *Brown* sheds light on how it would resolve this issue. 441 F.3d 1330 (11th Cir.2006).

In *Brown,* the court rejected the defendant's contention that the failure to include non-aggravating factors in the indictment violated his constitutional rights. As explained by the court,

> The non-statutory aggravating factors, although relevant to determining whether a jury *decides* to impose the death penalty, do not make a defendant statutorily eligible for any sentence that could not be otherwise imposed in their absence. "They are neither sufficient nor necessary under the FDPA for a sentence of death." (citation omitted). This rule comports with recent Supreme

Court precedent because a non-statutory aggravating factor does not "increase the penalty for a crime beyond the prescribed statutory maximum," *see Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), nor does it somehow allow the imposition of a more severe sentence than could have been imposed without it. (citation omitted). Thus, a non-statutory aggravating factor is not one of those "facts legally essential to the punishment" that must be included within the indictment. (citation omitted).

*Brown,* 441 F.3d at 1368.

The Court concludes from this rationale that the Eleventh Circuit would likely hold that the final balancing phase findings do not expose the defendant to the death penalty, but that he is exposed to that penalty when the jury finds beyond a reasonable doubt that he had the requisite mens rea along with the existence of one statutory aggravating factor.[10] Accordingly, the Court finds that failure to use the "beyond a reasonable doubt standard" in the final sentencing phase under the FDPA is not unconstitutional.

> 2. *Failure to Inform Grand Jury of Death Penalty and Failure to Allege in Indictment that Aggravating Factors Outweigh Mitigating Factors*

Defendant contends that the Indictment violates the Fifth and Sixth Amendments

---

**10.** The Court observes, however, that this rationale expressed by the Eleventh Circuit in *Brown* does not necessarily preclude a contrary conclusion. *Brown* could be reconciled with a holding that *Apprendi* requires that the final balancing phase fact finding be done using a beyond a reasonable doubt standard. In *Brown,* the finding at issue was a *non-statutory* aggravating factor, the existence of which is not a prerequisite for imposing the death penalty. The only aggravating factor that must be found for imposition of the death

penalty is a *statutory* one. Therefore, it is correct that a finding of the existence of a *non-statutory* aggravating factor is not necessary to expose the defendant to the sentence of death; whereas a finding that the aggravating factors outweigh the mitigating ones in the final balancing phase is absolutely necessary before a defendant can be sentenced to death—which would support the conclusion that such a finding should be made beyond a reasonable doubt.

because (1) the grand jurors were not informed that the imposition of the death penalty could be a consequence of their findings, and because (2) the Indictment failed to allege that the aggravating factors outweigh the mitigating factors. The Court rejects Defendant's contentions.

 The Indictment Clause of the Fifth Amendment provides in part that "[n]o person shall be held to answer for a capital, or otherwise, infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. The purpose of the Indictment Clause is to ensure that a defendant's jeopardy is limited "to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Stirone v. United States*, 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). The Indictment Clause and the notice requirement of the Sixth Amendment require that a defendant be notified of the charges against him through a recitation of the elements of the offense and a description of the charges in sufficient detail to allow the defendant to maintain that future charges relating to the same conduct are precluded by a previous conviction or acquittal. *See Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) ("It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.") (citation and internal quotation marks omitted); *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). Based on the foregoing, it is clear that so long as the defendant is sufficiently notified of the charges

against him, the indictment need not set forth the ultimate punishment sought for the offenses charged in the indictment. *Accord United States v. Haynes*, 269 F.Supp.2d 970, 980–81 (W.D.Tenn.2003).

 The Court finds that since neither the Fifth or Sixth Amendments required the Indictment to include the ultimate punishment sought for the offenses, no reason existed for the grand jury to even know what that punishment may be. Accordingly, Defendant's constitutional claim must fail.

 The Court also finds that the fact that the petit jury must find that the aggravating factors outweigh the mitigating factors to impose the death penalty is not an element of the offenses in the Indictment. *See* Court's discussion of *Apprendi supra.* Therefore, that fact need not be alleged in the Indictment.

### 3. Notice of Mental State and Aggravating Factors Evidence

Defendant contends that the Government's Notice of Intent to Seek the Death Penalty does not allege in sufficient detail the evidence supporting its contentions that (1) Defendant possessed the requisite mental state and that (2) aggravating factors existed for the imposition of the death penalty. Under Eleventh Circuit precedent, the notice is clearly sufficient. *See United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir.1999) ("The government is not required to provide specific evidence in its notice of intent."); *United States v. LeCroy*, 441 F.3d 914, 930 (11th Cir.2006) (reaffirming *Battle* and reiterating that the "government [is] not obligated to outline what specific pieces of evidence it plan[s] to use to support the aggravating factors").

### 4. The Statutory Aggravating Factors

Defendant contends that the Indictment and Notice of Intent to Seek the Death

Penalty improperly allege the statutory aggravating factors of "substantial planning and premeditation" and "vulnerability of victim." Defendant argues that these two factors do not adequately narrow the category of defendants eligible to receive the death penalty. Thus, these factors are unconstitutionally vague under the Eighth Amendment. Additionally, Defendant asserts that these factors otherwise do not apply in this case. The Court finds these factors are not unconstitutionally vague and that they are properly alleged in the Indictment and Notice of Intent to Seek the Death Penalty.

Both of the statutory aggravating factors relied upon by the Government are included in the list of aggravating factors specifically enumerated in the FDPA. *See* 18 U.S.C. § 3592(c)(9) ("substantial planning and premeditation"); 18 U.S.C. § 3592(c)(11) ("vulnerability of victim"). Nevertheless, Defendant contends that the word "substantial" is unconstitutionally vague and that the "vulnerability of victim" factor does not apply to the facts of this case.

▮ The Court concludes that "substantial" is not unconstitutionally vague in the FDPA context. To find this aggravating factor, the jury must find beyond a reasonable doubt that "[t]he defendant committed the offense after substantial planning and premeditation to cause the death of a person...." 18 U.S.C. § 3592(c)(9). "Substantial" has a "common-sense core of meaning ... that juries should be capable of understanding." *Tuilaepa v. California*, 512 U.S. 967, 975, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994) (citation and quotation marks omitted). Moreover, this aggravating factor "generally narrow[s] the class of persons eligible for the death penalty and ... reasonably justif[ies] the imposi-

tion of a more severe sentence on the defendant compared to others found guilty of murder." *Lowenfield v. Phelps*, 484 U.S. 231, 244, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (citation and quotation marks omitted). Accordingly, this Court rejects the contention that the substantial planning/premeditation aggravating factor is unconstitutional.

▮ The Government alleges that the "vulnerability of victim" aggravating factor applies because the victim was 24 weeks pregnant at the time of the offense. Defendant argues that this aggravating factor should not apply because there is no nexus between the pregnancy and the crime.

To find this aggravating factor, the jury must find beyond a reasonable doubt that "[t]he victim was particularly vulnerable due to old age, youth, or infirmity." 18 U.S.C. § 3592(c)(11). The Government argues that the victim in this case was vulnerable due to infirmity associated with her pregnant condition. The Government maintains that this vulnerable condition made her less able to escape and avoid the attack that resulted in her death. The Government also contends that her pregnant condition was a factor in her decision to get into the car with the Defendant. The Court finds these allegations sufficient to withstand Defendant's motion to dismiss this aggravating factor at this stage of the proceedings.

*5. The Non–Statutory Aggravating Factors of Future Dangerousness and Lack of Remorse*

▮ Defendant contends that the Government's reliance upon the non-statutory aggravating factor of future dangerousness will result in an arbitrary and capricious imposition of a sentence using unreliable

evidence in violation of the Eighth and Fourteenth Amendments. Defendant also contends that reliance upon a lack of remorse as an aggravating factor or as evidence of future dangerousness violates Defendant's Fifth Amendment right against self-incrimination. The Court finds that these aggravating factors pass constitutional muster at this time, and therefore, Defendant's request that they be stricken is denied.

The Supreme Court has made it clear that the Constitution does not prohibit the consideration of non-statutory aggravating factors that are relevant to "the character of the defendant or the circumstances of the crime." *Barclay v. Florida,* 463 U.S. 939, 967, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983); *Zant v. Stephens,* 462 U.S. 862, 878–79, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). The Court finds that an aggravating factor for future dangerousness is not prohibited by the Constitution or the statute and that such factor will not result in an arbitrary imposition of the death penalty. Any evidence in support of this factor will be scrutinized by the Court at the appropriate time to ensure that it is relevant to the jury's inquiry.

■ The Court further finds that the Government can introduce relevant evidence regarding Defendant's lack of remorse without violating his rights against self-incrimination. Accordingly, at this stage of the proceedings, the Court cannot conclude that the Government's reliance upon the Defendant's lack of remorse as an aggravating factor will result in a violation of his constitutional rights. The Court will scrutinize all evidence tendered in support of this aggravating factor to make sure Defendant's rights are protected.

The Court further refuses at this time to issue a blanket order excluding expert testimony on the issue of future dangerousness as unreliable. The Court will evaluate any such evidence at the appropriate time to determine whether it should be admitted.

### 6. Government's Pursuit of Counts One and Three

■ Defendant contends that the Government's pursuit of the death penalty under Counts One and Three of the Indictment violates Defendant's rights under the Double Jeopardy Clause, the Eighth Amendment, and the Due Process Clause because it permits multiple punishments for the same criminal conduct. Additionally, Defendant argues that it will impermissibly skew the jury's deliberative process toward death. Defendant's contentions lack merit.

In Count One of the Indictment, the grand jury charges the Defendant with the offense of murder. 18 U.S.C. § 1111. Count Three charges the Defendant with using a firearm during a crime of violence. 18 U.S.C. §§ 924(c)(1), (j). The Government seeks the death penalty under both counts.

Double jeopardy issues arise from successive prosecution and cumulative punishment. *United States v. Sanchez,* 992 F.2d 1143, 1153 (11th Cir.1993). The question for the Court is "whether Congress intended that a criminal defendant be sentenced independently for violation of each of two or more statutes." *Id.* Defendant argues that Congress did not intend to provide multiple punishments for murder that is committed using a firearm. Defendant's argument ignores the language in 18 U.S.C. § 924(c). That provision specifically provides that the punishment for the use of firearm to commit a crime of vio-

lence is "in addition to the punishment provided for such crime of violence." 18 U.S.C. § 924(c)(1)(A). This language alone clearly reveals Congress's intent to permit multiple punishments for these offenses. *See United States v. Allen,* 247 F.3d 741, 767–70 (8th Cir.2001), *vacated on other grounds,* 536 U.S. 953, 122 S.Ct. 2653, 153 L.Ed.2d 830 (2002).

In addition to Congress's intent to permit multiple punishments for murder and for using a firearm during a crime of violence, it is clear that each of these offenses requires proof of an element that the other does not require. To convict the Defendant of murder, the jury must find malice aforethought and some type of premeditation. To convict the Defendant on the firearm count, the jury must find that the Defendant used a firearm.

▮ For these reasons, it is clear that pursuit of Counts One and Three does not violate Defendant's right to be free from double jeopardy. The Court also rejects Defendant's argument that permitting the jury to consider two death penalty eligible counts will result in a skewing of the jury deliberative process toward death. Other courts have rejected this argument, and this Court is persuaded by the rationale of those cases. *See Allen,* 247 F.3d at 769–70 (citing *United States v. McVeigh,* 153 F.3d 1166, 1176 (10th Cir.1998)). With proper instruction from the Court, there should be no unconstitutional skewing of the deliberative process.

### 7. *Allegations of Multiple Mental States*

▮ Defendant contends that the Government's intention to establish multiple mental states in support of its contention that Defendant possessed the requisite

statutory mens rea to authorize the death penalty will unconstitutionally promote a skewed consideration of the aggravating circumstances during the jury's balancing of the aggravating factors and mitigating factors. Defendant also maintains that it is simply impossible for the Defendant to possess four separate mental states during the commission of a single crime. These contentions lack merit.

The Court finds that a defendant could possess four separate mental states during the commission of a single crime, and Defendant has pointed the Court to no authority to the contrary. Consideration of more than one mens rea under the FDPA has been found constitutional. *See United States v. Webster,* 162 F.3d 308, 355 (5th Cir.1998). The Court finds the rationale expressed by the Fifth Circuit in *Webster* persuasive and rejects Defendant's contrary contention.

▮ The Court also rejects Defendant's contention that permitting the jury to consider more than one mens rea unconstitutionally skews the jury's deliberative process toward the death penalty. Consideration of the mens rea requirement is a threshold issue that is considered by the jury before the jury even considers weighing the aggravating factors. If the jury does not get beyond that threshold, it never reaches the weighing of aggravating and mitigating factors. If the jury does find the requisite intent, then it will weigh the aggravating and mitigating factors without any reconsideration of the mens rea findings that it previously made. Therefore, any findings regarding intent should not impermissibly influence the final balancing process. The Court finds this process does not unconstitutionally skew the jury's deliberative process toward death. *See United States v. Jackson,*

327 F.3d 273, 301 (4th Cir.2003).[11]

C. *Motion to Trifurcate*

Defendant has filed a Motion to Trifurcate the Jury Deliberations, arguing that a failure to do so will violate his rights under the Fifth, Sixth, and Eighth Amendments. Although the Government initially opposed this motion, it informed the Court at the hearing on the motion that it no longer opposed trifurcation.

The Court finds trifurcation to be appropriate and grants Defendant's motion. Accordingly, the jury's deliberations in this case shall be trifurcated. Phase one shall address Defendant's guilt or innocence. Phase two shall address Defendant's eligibility for the death penalty, including a determination of the existence of the requisite statutory mens rea and at least one statutory aggravating factor. Phase three shall address whether the death penalty should be imposed, including the weighing of aggravating and mitigating factors.

CONCLUSION

Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional, to Dismiss the "Special Findings" from the Indictment, and to Strike the Notice of Intent to Seek the Death Penalty (Doc. 40) is denied. Defendant's Motion to Trifurcate Jury Deliberations (Doc. 41) is granted.

IT IS SO ORDERED, this 10th day of August, 2006.

**11.** The Court also observes that its decision to trifurcate the jury's deliberations in this case should further alleviate concerns that the process will skew their deliberations toward death. *See infra.*